Our next case is 23-12346, FAMA Construction, LLC v. U.S. Occupational Safety and Health Review Commission Good morning. May it please the Court, my name is Andrew Gross and I stand here on behalf of FAMA Construction. FAMA is challenging the validity of OSHA's definition of controlling employer in its multi-employer citation policy. That definition has expanded over time. That's our concern. In its earliest version of the policy, OSHA defined a controlling employer as an employer who is in the best position to correct a hazard or to assure its correction. That definition has been expanded by OSHA over time and now OSHA says that a controlling employer is an employer who has general supervisory authority over the work site. Well, what does that mean? Well, the Secretary contends correctly, we don't argue, that there is enforcement authority to cite multiple employers at a job site. However, all of the authorities relied upon by the Secretary involve either the general contractor at the construction site or some mid-level, mid-tier contractor who itself had its own employees working, performing tasks at the job site, either as supervisors at the job site or as tradespeople and in some cases both, every case. The Secretary doesn't identify any of... Well, clearly a controlling employer on this job site would be the home builder developer. I forget their name. They were not cited. The exposing employer here is, of course, the labor subcontractor who was doing the roofing work on one particular home and the owner of that company was standing there supervising his own workers. But OSHA didn't cite the actual exposing employer either. So that's one of the points we raise is, we explore this more extensively in the briefing, that not only is the definition of a controlling employer vague and ambiguous, but its enforcement is arbitrary, capricious. If you don't cite the most closely related employer, the one who was standing there watching the employees, how can OSHA cite any other employer on the job site? I'm not here to speak for the general contractor home builder and this being a single family subdivision, I don't know how large it was, but the superintendent and the project workers for the home builder might well have been working in a different street in the subdivision. So if they had been cited, they might have argued that they lack employer knowledge, a critical element in the secretary's burden of proof. Now I would like to draw the court's attention to two circuit decisions, which I think are instructive. One is the case of Sulvis v. Summit Contractors. It's an 8th Circuit case and it's cited, it's referred to in the secretary's brief, primarily for the principle that OSHA has the authority to cite multiple employers at a construction site. Well, that's true. In that particular case, the case was arguing, was an employer only responsible for the safety of its own employees, or is it also responsible for the safety of the employees of other employers at the job site? And in that Summit Contractors case, the 8th Circuit said, well, OSHA can cite multiple employers at the site so long as that employer also has its own employees at the job site. FAMBA Construction had no employees at this job site. It's essentially a business broker, a middleman. FAMBA's in the business of acquiring roofing labor and supply and labor subcontracts with home developers. And then FAMBA turns around and has a listing of available labor subcontractors. And it basically tries to peg a price, how much do we have to pay a labor sub to do the labor? That will also clear us a profit based on what our contract proceeds are from the general contractor, from the home builder. FAMBA has no employees working in the job site. They never stand on a roof. They don't own a hammer or a truck. They basically sit in an office monitoring spreadsheets, looking at pricing of supplies and pricing of labor. Now the 8th Circuit, not only did it hold that, to hold an employer responsible for the job site, to hold an employer liable as a controlling employer, not only did they have to have their own employees in the job site, they relied for a good portion of their rationale on a case which it cited out of the 1st Circuit, which is Reich versus Simpson-Gumperts-Hegart. And in that case, the 1st Circuit also noted in every case cited by the Secretary, the cited employer had its own employees at the job site. So, we're asking this court... This FAMBA had control over the job site in that it had control over the workers in that it could fine them, could it not? Only by reference to the document, but... Well, I'm talking about the document. Their contract with the labor sub... Well, since the beginning of English law, contracts have been equated with control. The contract specifically stated that the labor subcontractor was solely responsible for safety, and that makes sense. That contract puts... It said that FAMBA could supervise and fine them. It did. Did it not? It did. That is boilerplate language in virtually every flow down... Fortunes have been lost on boilerplate language, as you know. I mean, come on. That's correct, but it doesn't take away from the fact that there's no case holding that an employer who does not have its own employees at the job site has never been held to be a controlling employer. I'm sorry. I thought we held that in FAMBA 22, 2022. I'm sorry? Oh, no. In that case... It was a decision involving your client where we held that FAMBA is the controlling employer in this case, in that case. The issue of... In that case, FAMBA did not contest the multi-employer citations definition of a controlling employer. That was the distinction. Whether it contested it or not, we found it was a controlling employer, and you said no one's ever found a company to be a controlling employer in this situation. That's exactly what we held in FAMBA 2022. But this court, that panel, did not address that issue. That issue of whether FAMBA had employees in the job site... That's exactly how we addressed the issue. We said it is a controlling employer in these circumstances, which matched the present circumstances. I think that this case squarely asks the court to look at OSHA's definition of a controlling employer. It's an issue which we did not raise, and therefore, the issue of who is a controlling employer was not... All right. Let's assume that you lose on the attack, facial attack, basically, on OSHA's definition. Do you... Have you got an argument why, if that definition is viable and is valid, it doesn't apply to your client? Well, now you come to the elements that the secretary must prove to show... to enforce the citation. One of those elements is employer knowledge. Knowledge is either actual or constructive. Clearly, there's no actual knowledge because no one from FAMBA saw... There's no knowledge because your client's lawyer informed them the best thing they could do to avoid liability is not pay any attention, not go to the job site, and not know what's going on. Turn two blind eyes to the job site. To my knowledge, no attorney or anybody else informed FAMBA that they didn't have to come to the job site. I thought it was in the record in this case, and you correct me if I'm wrong, and we'll hear from your opposing counsel, that they were advised not to go to the job site for legal reasons. To my knowledge, that is not correct. Okay, we'll find out. So, you said in this case, what makes it different from the 2022 case, is that you're also challenging OSHA's authority under this rule more broadly. And the secretary has said, well, you did not preserve this issue below. You did not present it to the commission. And I do see where this issue of your objection regarding the constitutionality of the policy or OSHA's authority to enact it, you did mention in the ALJ briefing. I don't see it in the commission briefing. Is it enough that you raised it before the ALJ and not the commission? It was indeed raised at all levels. It was raised in the initial summary response, the initial summary judgment motion before the ALJ. It was raised again in the second.  We have a statute that says no objection not urged before the commission shall be considered by the court. Is it enough that you raised it before the ALJ? Or did you need to raise it before the commission? We did raise it before the commission. Where did you raise it before the commission? In one of our enumerations of error to the commission, we specifically stated that the multi-employer citation should not include — I forget how I worded. I'd have to look at the — Give me a moment. I will find it and have it ready when I come back up in my rebuttal time. It is in the statement of error to the commission, and I restated that as the statement of the issues to this court. It is one of the five statement of issues to this court, almost a cut and paste of what I put before the commission. I see that my time has expired, and I'll yield. May it please the Court. My name is Jessica Mathis, and I'm representing the Secretary of Labor. Is it enough that you raised it before the ALJ? No, Your Honor. This court actually has a relevant decision in D.C. construction, which my colleague actually cited in his brief. And in that decision, the court specifically analyzed whether it would be enough simply to raise something before an ALJ as opposed to raising it in the PDR before the commission. It cites some really good federal law, and it concludes that that is not, in fact, enough. He's obviously going to get back up and say he did raise it before the commission. Do you agree or disagree with that? Well, Your Honor, looking at the statement of error in this PDR, I've got a couple notes on this. I mean, first of all, the commission should clarify that the application of OSHA's multi-employer policy should be limited to general contractors and not mid-tier subcontractors lacking control over the job site. I mean, first of all, this isn't even really a disagreement with the policy itself because of the way that this is phrased. I think that this shows a clear understanding that the policy with controlling employers is about control. So the phrasing here that it should be limited to employers, excuse me, it should not be applied to employers lacking control over the job site. He's certainly challenging the application of the policy to FAMMA. Yes, Your Honor. You're saying it doesn't go beyond that? Yes, Your Honor. I mean, essentially, it's asking the court to disregard the ALJ's findings of fact as to FAMMA's status as a controlling employer. I'd also like to directly address some of my colleague's other arguments. Why don't you address whether or not perhaps I'm just completely, you know, Mark, twice in these two kinds of problems of memory. One is not remembering things that happened. The other is remembering things that didn't happen. Maybe I remember something that didn't happen. I thought it was in this record that their lawyer had advised them not to go to the job site because it would increase the responsibility. Am I wrong about that? No, Your Honor. You're correct. That's in the second ALJ decision after remand. It's on page 3, note 2. The ALJ acknowledges that FAMMA admitted that it stopped taking safety efforts based on legal advice that it could be viewed as evidence of an employment relationship with workers. So it wasn't so much what they would or might say there. It was that they might be viewed as an employer, which conveniently kept them from seeing anything, even though in this case they had knowledge otherwise. Correct? Yes, Your Honor. And really the only difference between the facts in this case and FAMMA 1 in 2022, I mean the same, some of the same workers were involved that FAMMA has had more than a decade of experience working with. But really the only different fact here is that FAMMA, and FAMMA has admitted this, is now making no efforts whatsoever to ensure safety at the work site. And it's clear that FAMMA 1 came down and FAMMA's attorney, whoever it was, advised them that, well, in this case, you know, they saw that you conducted inspections, so you better stop inspecting so that there's no further liability. And while FAMMA has now restyled itself as a broker of labor, essentially, again, there's no, there's really no difference in how FAMMA conducts business. As you pointed out, Your Honor, the FAMMA manager and owner both admitted that FAMMA has the power to stop work for unsafe behavior. And on the day of the inspection, FAMMA learns of the inspection and orders roofer, excuse me, ordered workers off of the roof and to stop working and leave the job site. That alone, I think, is clearly evidence of a controlling relationship. FAMMA does impose safety rules via contract. It has in the past disciplined and fired and fined workers for not complying with safety rules. It's entered into previous settlement agreements with OSHA where it agreed to take safety measures and ensure that its workers were in compliance with these safety measures. These are all very clear facts that demonstrate that FAMMA is still a controlling employer at this work site. What should we make of the selective enforcement argument? Your Honor, the Secretary's position from the start of this case has been that these workers are FAMMA's workers, whether they're directly employees or, you know, FAMMA has a controlling relationship, but the employers don't report to anyone else. FAMMA is the only employer that I'm aware of that any facts in the record show that these employers report to. And really, I mean, this goes back to my colleague's argument about how the homebuilder supposedly should have been cited as a controlling employer. But again, there are no facts in the record. And my colleague has not pointed to any facts in the record that show really much of a relationship at all between the homebuilder and these workers. I'm, you know, in agreement, I'm in agreement with my colleague on the point that the most closely related, in other words, the controlling employer should be cited. And here, the really the only employment relationship that there's evidence of in the record is this relationship between FAMMA and these workers. Also, I'd like to note that the policy does not impose any requirement that the employer be cited at the job site. As you noted, Your Honor, in FAMMA 1, this court did make the finding that FAMMA was a controlling employer, even though I believe in that case, FAMMA did not have employers, excuse me, employees on the ground at the work site. Did your agency also cite the folks who were directly on the job site, supervising on a day-to-day basis the roofers? Your Honor, again, I would just emphasize that the only evidence really in the record here is of this relationship between the workers and FAMMA. I thought it was acknowledged there were roofing subcontractors. Yes, Your Honor. They were under who? FAMMA. Okay, then there is a relationship between FAMMA and the roofing subcontractors and then the roofers. Your Honor, the roofing contractors, subcontractors, they communicated through FAMMA. As far as I'm aware, all of the communication went through FAMMA. I mean, roofing subcontractors could have made the roofers wear safety equipment. Could they not? I'm not sure that they had the authority to require that in the way that FAMMA did. I'm not sure that they... The people working directly with the subcontractors didn't have any obligation to follow the orders and commands of the subcontractors? Ah. I've just never seen that before. Your Honor, again, there's not that much I can say based on the facts in the record here because really there's not a lot about the general contractor, the homeowner, excuse me, the homebuilder. Let me try to clarify Judge Carnes' question. Was there a subcontracting company that these workers worked for or was it just the workers worked directly under FAMMA? No, Your Honor. I think I might have misunderstood your question. If I'm understanding right, the workers did not have any other company that they reported to. They didn't... There wasn't any other company that I'm aware of that they came from. They... It was really only FAMMA. So it was 20 workers. So every morning, 20 workers showed up at 7 o'clock in the summertime. They went to B-T-E and they just started roofing. And there was nobody over them other than FAMMA who never went to the job site because they didn't want to be construed to be an employer. I wouldn't want to see that roof. If that... I mean, there had to be somebody that they were working under. There may be, Your Honor, but that evidence simply isn't in the record before this court. Okay. With my remaining time, if there are no further questions on that aspect, I would briefly like to touch on the affirmative defense that FAMMA raised of economic infeasibility. To establish this affirmative defense... Now, he didn't address that. If you want to address it, he can reply to it, but you don't have to. It's up to you. I'd just make one quick point that the test requires two elements and FAMMA made no showing at all on the second. Yes, Your Honor. Your Honor, this court in the MC Dean decision, that's 505 Federal Appendix 929 from 2013, gives a decent example of this. That affirmative defense actually was not successful, but regardless, the court makes note of it. That was a case where an employer failed to guard a skylight and the alternative to guarding the skylight was the employees wearing personal fall protection instead. Do you have two common tests that you're citing binding on us? Your Honor, this court has adopted it, yes. FAMMA presented no cases, actually. It's a port of argument that it is a separate test. They cited three cases, one from this circuit, MC Dean, which I just addressed. They cited a First Circuit case and also a second case from this circuit, color pigments. That last case that I listed deals with feasibility and rulemaking and is completely an opposite. And the other two cases cited do, in fact, apply the two-factor test. Tell me the case where we adopted it because I know in MC Dean, it's talking about a two-prong test, but it's not what you're talking about. MC Dean is saying you have to prove, to establish infeasibility, MC Dean must prove that compliance with a particular standard either is impossible or will render performance of the work impossible, and two, that the employer undertook alternative steps to protect its workers. So here, we have a situation where FAMMA has said we'd have to hire somebody, it's a $50,000 salary. How is that not enough? What case law of ours says we have to apply the test you're talking about? Your Honor, the test that you just described in MC Dean is the test that we are arguing. Well, so FAMMA presented evidence of the first factor, which is that compliance would be impossible, but that does not go at all to the second factor, which is that no alternative means were available or that the employer used alternative means. And no evidence at all was presented on that. So you're suggesting that because they said it costs us $50,000 to hire somebody, so we did nothing, doing nothing doesn't meet the test. That's correct, Your Honor. Finally, I'd like to talk about my opponent's arguments about the validity of the multi-employer policy. Again, I'd like to emphasize that FAMMA is basically agreeing with the policy by saying in their statement of issues that only an employer that has control over the worksite can be held liable. I'd also like to point out that FAMMA in its brief makes much of this argument that it is simply a mid-tier employer. This term is nowhere in case law. This is a term that FAMMA has used, basically, to try to create new law here and to try to create an exception to the policy, and it's simply unsupported. An employer's place in a hierarchy is ultimately irrelevant to the extent that it doesn't address this question of control, which, again, I think he and I actually agree that really the question is authority and control over safety matters at the worksite. If we were to find that FAMMA had, in fact, raised this issue of whether the multi-employer citation policy is unconstitutionally vague and an invalid interpretation, what are we supposed to do with that in light of the fact that we do have Loper-Bright here now? Your Honor, the Loper-Bright decision has an excellent quote that I think applies to here. They're talking about in the context of overruling Chevron. We do not call into question prior cases that relied on the Chevron framework. The holdings of these cases that specific agency actions are lawful are still subject to statutory stare decisis. This is page 412 of that decision, and this is an agency interpretation of its own authority, but this case, excuse me, the cases interpreting the policy itself are based on Chevron and should not be overruled. If there are no further questions, I see my time is up. Thank you. In our enumerations of error to the commission, we try to limit liability to those who have control over the job site. That's a critical phrase. What's the job site? Well, that is exactly what was discussed by the Eighth Circuit in Solis v. Summit Contractors and the First Circuit in the Wrights v. Gumpert's case. The job site means the place of employment. It's a physical location. It's where the hammering and the drilling and the digging is going on, and to suggest that FAMA would have to staff the job site is a stretch. Really, it's a reach too far. What does the record show as to who was in control of the job site? There's very little record, Your Honor, because this was a summary judgment case, and it was never tried, so there was no specific evidence. There's no question that the labor subcontractor who agreed to take the job for a fixed price, who decided how many employees to staff it with, who paid those employees, who told the one to show up and what to do, and who, indeed, was standing on the roof with them, clearly had the authority and the obligation under OSHA's policy, not as a controlling employer, but as the exposing and creating employer to discipline its employees and make them wear fall protection equipment. Now, I cite in our brief, and I'm not going to repeat it here because I was simply asked the Court to take a look at my main brief on pages 16 and 17, where the IBP v. Herman case out of the D.C. Circuit and the Evergreen Construction case, which originated in this circuit, but in which the commission, a commission order or decision, clearly stated that contending with families' rights to require to discipline its subcontractors' employees takes the meaning of control to an unacceptably high level of abstraction, something like control once removed. I go on to explain how in IBP v. Herman, it suggested that rather than cracking down on safety at a job site, a contractor, a mid-tier contractor, or really any contractor, would be better advised not to do anything at all. Now, obviously the Court is concerned about that. So are we. But I think you have to have limits on who you're going to hold responsible as a controlling employer. So I come back to the phrase at the job site because both the Summit Contractors case and the First Circuit case made that a marker, even though those cases were looking at whether an employer was responsible for protecting other employers' employees, not just its own, that dicta is extremely important. I would like to bring that dicta into a rule, into a precedent in this circuit because the commission is looking for a precedent in this circuit. In the Bovis Street case, the Devitt-Bovis Street case, a commission decision which arose within this circuit, the commission clearly stated that they rely on circuit precedent. But with no circuit precedent on this issue in the Eleventh Circuit, the commission was prepared to adopt OSHA's multi-employer policy. I am therefore asking this Court to please set the precedent for this circuit. So before you sat down the first time, you said you were going to look up and find where you had made the argument about the enforceability of OSHA's policy in the briefing for the commission. Opposing counsel read from your briefing to the commission. Do you have anything to add to what she said? I do not, other than what I just stated about the job site, control over the job site. What does that mean? That's what the briefing went into at all levels. I think sometimes, and I hope the Court would understand, that sometimes it's difficult to frame the enumeration of error. It reveals itself through the briefing and argument of the case. And what you have to state in the beginning is not necessarily how it plays out. But clearly, at all stages, we made the argument that all the cases cited by the Secretary, the cited employer, against whom enforcement was found to be appropriate, had its own employees at the job site. Is there any evidence in the record about the, as you call it, the labor subcontractor, who that is and what the role is? I'm sorry, evidence in the record? Evidence to a labor subcontractor. Is there any evidence of who that is in this case? Yeah, I think it's Ortega Construction. It's somewhere in the facts. It's the contract between Family Construction and Ortega Construction. And Ortega hired the workers. Ortega decided how many employees to hire, how to staff the job, who they would be, when to show up, basically all the elements of an employer. That's the same contract that also stated that FAMA had control over the workplace, too. Well, FAMA... The ability to come in and enforce safety regulations. The contract, FAMA doesn't claim control. They do. Well, I think it reads into it that nowhere does it state that they're going to hire or fire or that they're going to be on site to discipline workers. All they have is... Well, FAMA is requiring Ortega to be responsible for safety on the job site. The secretary wants to generate that into FAMA's authority over safety over the job site. And I just don't think that's correct. And I think the IVP versus Herman case and the Evergreen construction case would challenge that. The NDC case, which my colleague referred on, is the only... Well, it's a recent 11th Circuit case, but there was quite a bit of argument in that case also about whether the issue had been raised... properly raised before this court. And clearly, at no point in that case had there even been any hint of it being raised, let alone where we have a direct challenge to the requirement of at the job site, on-site management. And I use the term throughout all the briefing, on-site performance of tasks at the job site. I think it's critical. Yes, go ahead. Before you sit down, and I'm not in feasibility defense, because I understand that you say it would not be feasible because it would cost FEMA $50,000 to have a person out there inspecting and making sure that roofers weren't being injured and killed by their own violations of the regulations. You got fined, as I understand it, have been told, total penalties of $68,000 in this case. Is that not correct? I think the penalties are actually higher. I think there are three separate citations. My sense was it was a three-digit number, but I frankly, Your Honor, I'll admit to not remembering what the number is. I added, well, I'll go with higher. It makes my point even more. I assume also you're not working pro bono. That's correct. So it's not economically infeasible for FEMA to get cited as a controlling employer for violating the rules of OSHA to pay six digits or more in this case, but it is economically infeasible for them to pay $50,000 to see that these violations and injuries don't occur? Is that your position? I'm sorry, but I have to question. I have to. I just think that's wrong. I mean, if you want to get to the fact that they're paying me, they've gotten a big discount on this because I feel strongly about this issue. Frankly, I've been looking for this issue. We're already above $50,000 in what this case is costing. But it hasn't cost them $50,000 in legal fees, considerably less. I'm saying it cost $68,000. You said it was more. Fine. More than $68,000 plus whatever you're charging them. I don't know, don't care, but I'm saying it's more than $50,000 a year. And how is it economically feasible to do that if it's infeasible to pay $50,000 to prevent these violations from occurring? It's not infeasible, but then the penalty shouldn't be assessed against FEMA. They're not even liable to a penalty of any dollar amount. The penalty in feasibility defense is not valid under our law that you have to show that the first one is that you can't afford it, basically. Well, I think the tax returns clearly show that the company doesn't clear $50,000 in any of the three years prior that were admitted into evidence. Then how are you going to pay these penalties and pay you? That's... I'm not the client. It's not my decision. Thank you.